NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0016n.06

No. 20-5311

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|  | ) | Jan 06, 2022 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE U.S. |
|  | ) | DISTRICT COURT FOR THE |
| BRANDON GUFFIN, | ) | WESTERN DISTRICT OF |
|  | ) | TENNESSEE |
| Defendant-Appellant, | ) |  |

Before: GILMAN, KETHLEDGE, and LARSEN, Circuit Judges.

KETHLEDGE, Circuit Judge. Brandon Guffin confessed to a string of armed robberies after he first invoked, but later waived, his right to have counsel present at his interrogation. The district court denied Guffin's motion to suppress the confession, and he thereafter pled guilty. On appeal, he argues that police activity before he waived his rights amounted to interrogation and made his waiver involuntary. We disagree and affirm.

I.

In December 2018, Brandon Guffin robbed nine convenience stores and fast-food restaurants in Memphis. On December 30th, Guffin robbed a Family Dollar store, where a security guard saw him get into a blue Hyundai Sonata. The stolen money had a tracking device, which led police to a house where they spotted a blue Hyundai Sonata in the driveway and a man matching Guffin's description. The man fled by foot and eluded the police, and when they got

back to the driveway the car was gone too. But the next day, officers found the owner of the car, Guffin's girlfriend Gwendolyn Morris, at her home and brought her to the police station. Morris then called Guffin, who turned himself in.

At the station, Morris confessed that she had driven Guffin away from the Family Dollar. Meanwhile, FBI Special Agent Joshua Cook read the *Miranda* warnings to Guffin, who invoked his right to counsel. Cook ceased questioning and told the other officers that Guffin had asked for a lawyer. Around 5:00 p.m., officers took Guffin from the interview room to the cellblock. Throughout the evening, officers checked on Guffin in his cell—in compliance with department policy—and brought him a blanket, pretzels, and water.

During one of these visits, Guffin asked Sergeant James McDonald whether Morris was going to jail. McDonald said she might; Guffin replied that Morris "didn't have anything to do with anything," and that he "would be willing to talk to investigators" if he could speak to her. McDonald responded that, because Guffin had invoked his *Miranda* rights, the police "couldn't ask him any questions," and that Guffin "had to make it clear that he wanted to talk to us before we could ask him anything."

Later that evening, McDonald told other officers that Guffin had offered to tell them what happened if he could talk to Morris. Although the officers thought they already "had enough" to charge Guffin with robbery, they decided to let him talk to Morris anyway. Detective Darrold Hudson led Morris in handcuffs past Guffin's cell, which was the only way out of the station. Guffin again asked what the officers were going to do with her, and Hudson responded that she was "about to go to jail." Morris and Guffin then spoke through the cellblock bars—Guffin asked Morris if she loved him and if he had "fucked up," and Morris nodded yes to both questions. After a few minutes, the officers took Morris outside.

After Morris left the station, Guffin told the police he would speak with them about the robberies. Investigators again read him his *Miranda* rights, which he waived. Guffin later confessed. Morris helped the police locate evidence of the crimes in her home and, instead of taking her to jail, they released her.

A federal grand jury thereafter indicted Guffin for nine counts of robbery and nine counts of using a firearm during a crime of violence, in violation of 18 U.S.C. § 1951 and 18 U.S.C. § 924(c). He filed a motion to suppress his confession, which the district court denied after an evidentiary hearing. Guffin pled guilty and was sentenced to 360 months' imprisonment. This appeal followed.

II.

Guffin challenges the district court's denial of his motion to suppress. We review the district court's legal conclusions de novo and its factual findings for clear error, viewing the evidence in the light most favorable to the district court's decision. *See United States v. Collazo*, 818 F.3d 247, 253 (6th Cir. 2016).

If a person detained in police custody "states that he wants an attorney, the interrogation must cease until an attorney is present." *Miranda v. Arizona*, 384 U.S. 436, 474 (1966). Interrogation in this context includes both express questioning and "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

Yet suspects who invoke their right to counsel "remain free to change their minds." *Bachynski v. Stewart*, 813 F.3d 241, 246 (6th Cir. 2015). Courts may admit a confession after a suspect invokes his right to counsel if the suspect initiates further conversation with the police and

then waives his right to counsel. *Id.* A suspect "initiates" conversation "when, without influence by the authorities," he "shows a willingness and a desire to talk generally about his case." *United States v. Whaley*, 13 F.3d 963, 967 (6th Cir. 1994). The waiver must be "made voluntarily and free of any coercion." *United States v. Binford*, 818 F.3d 261, 271 (6th Cir. 2016).

Here, Guffin initiated further conversation with the police when he asked Sergeant McDonald what would happen to Morris and offered to talk about his case. Officers then read Guffin his *Miranda* rights, and Guffin confessed. The district court properly denied the motion to suppress. *See Oregon v. Bradshaw,* 462 U.S. 1039, 1045-46 (1983).

Yet Guffin contends that that the police forced his hand to resume conversation by walking Morris past him in handcuffs. But that happened after Guffin offered to talk about his case, not before. Nor did the officers' actions here make Guffin's confession involuntary. Guffin's argument on this point, simply stated, was that the officers were required to go out of their way to ensure that Guffin's concern for Morris would not cause him to initiate conversation with them. Nothing in the Constitution or the relevant caselaw compels that conclusion.

The district court's judgment is affirmed.